GRIMES, Justice.
Richard Elliott Kwasnik applied for admission to The Florida Bar on June 7,1979. Following a formal hearing, the Board of Bar Examiners issued findings of fact and conclusions of law which stated that Kwas-nik failed to meet the standards of conduct and fitness required for admission to the Bar. Kwasnik’s petition for review of the findings and conclusions of the Board was denied by this Court on February 19, 1981. Kwasnik filed a petition seeking reevaluation on March 1, 1983, but failed to pay the court-ordered $1,000 cost deposit until April 22, 1986. Thereafter, a formal rehabilitation hearing was held on November 14, 1986. Following this hearing, a report was issued on January 21, 1987, in which the Board once again recommended that Kwasnik not be admitted to The Florida Bar. Kwasnik has now filed a petition for review of that report.
Kwasnik’s problems originated when he caused the death of another in an automobile accident while driving in an intoxicated condition. As a result of the accident, a civil judgment of $200,000 was entered against him in 1974. His liability insurance was sufficient to pay only $10,000 of the judgment. He declared bankruptcy in 1980 and was legally exonerated of his judgment obligations. The bases for the Board’s original recommendation against him were threefold:
(1) In a deposition taken in aid of execution of the judgment, Kwasnik testified falsely that he did not have a joint interest with his wife in any checking account.
*339 (2) He filed a misleading amendment to his application which stated that he had paid approximately $1,200 per year towards the judgment when in fact his payments during the preceding six years, all of which were the result of garnishment, totalled only $4,685.
(3) Even though he was earning a salary of $27,000 per year, he had made no effort to make any voluntary payments toward the judgment.
According to article III, section 4(e), of the Supreme Court Rules Relating to Admissions to the Bar, an applicant who asserts rehabilitation from prior conduct is required to produce clear and convihcing evidence of such rehabilitation, including, but not limited to, certain enumerated elements. In its recent report, the Board concluded that Kwasnik had failed to meet two of the enumerated requirements. The first of these was:
5. Personal assurances, supported by corroborating evidence, of a desire and intention to conduct one’s self in an exemplary fashion in the future.
The Board concluded that even though Kwasnik and his wife had a combined annual income of $90,000 and own a home with an equity of $225,000, he had failed to accept responsibility for his continuing moral obligation to the decedent’s family. Recognizing that Kwasnik no longer had any legal obligation to pay the judgment, the Board nevertheless observed that he had not taken any steps to fulfill his moral obligation since the formal hearing in 1980. The report stated:
Based upon the testimony of the applicant as quoted above, the Board finds that the applicant will continue to refuse to accept responsibility for his continuing moral obligation unless motivated by a third party. The Board does not take the position that the civil judgment, or even the original settlement offer of 15,000,* needs to be fully satisfied before the applicant should be recommended for admission, but rather finds that the applicant’s attention to this matter has been— and apparently will continue to be — nonexistent. Willful and continuing desre-gard [sic] of a serious moral obligation is simply not exemplary conduct.
The effect of a voluntary bankruptcy upon an applicant’s fitness for admission to practice law has been a vexing problem. In Florida Board of Bar Examiners Re: G.W.L., 364 So.2d 454 (Fla.1978), and Florida Board of Bar Examiners Re: Groot, 365 So.2d 164 (Fla.1978), the Court stated that the act of filing for bankruptcy, standing by itself, did not constitute sufficient cause to deny admission to The Florida Bar. The Court reasoned, however, that the circumstances surrounding the decision to file for bankruptcy may demonstrate a lack of good moral character sufficient to deny admission.
The foregoing cases do not control the issue before us because they dealt with the circumstances surrounding the declaring of bankruptcy, and Kwasnik has already been denied admission in part for just such circumstances. The question here is whether following bankruptcy he should be refused admission for not having made any effort to provide assistance to the family of the decedent, even though he was not legally obligated to do so. Given the fact that our bankruptcy laws are designed to provide a fresh start for those who are overburdened with debt, we cannot say that the subsequent failure to make payments on the discharged debts may be considered as a basis to deny admission to the practice of law. We recognize that Kwasnik may have continuing moral obligations to the family of the man he negligently killed, but to permit such considerations in a petition for admission to the Bar would require the making of such subtle distinctions that no satisfactory rule could be devised.
While it is evident that the Board’s major concern focused upon his response to the $200,000 judgment, the Board also found *340 Kwasnik wanting with respect to a second enumerated requirement:
7. Positive action showing rehabilitation by such things as a person’s occupation, religion, community or civic service. Merely showing that an individual is now living as and doing those things he or she should have done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society. The requirement of positive action is appropriate for applicants for admission to the bar because service to one’s community is an implied obligation of members of the bar.
Kwasnik has been working for the New York Legal Aid Society ever since his original application was denied. While he is paid an annual salary of $53,000 for his services, the record reflects that he is a competent lawyer who is working in a community whose major law firms offer new associates annual salaries of $65,000. Kwasnik is one of four staff attorneys who have volunteered to work in a unit to handle the legal aid society’s most serious criminal cases. The attorney in charge reported that Kwasnik had done an exceptional job and that his “action in volunteering for this assignment is far beyond the job description for an attorney in this office.” He also spends much of his free time in the training of less experienced attorneys. During a strike in 1982, Kwas-nik declined to leave his job because of a sense of obligation not to abandon his clients. The Board itself recognized that since the date of his previous hearing, Kwasnik has otherwise led an exemplary life. Under the circumstances, we conclude that Kwasnik has demonstrated sufficient rehabilitation as to qualify for admission.
While we now hold that Kwasnik meets the character requirements for admission to the Bar, it has been more than eight years since his successful completion of the Bar examination. In the meantime he has been living in New York, and there is no indication that he has kept abreast of Florida law. Therefore, before Kwasnik can be admitted to practice law in Florida, he must once again successfully pass the Florida Bar examination.
It is so ordered.
McDonald, C.J., and OVERTON, EHRLICH, SHAW, BARKETT and KOGAN, JJ., concur.

 Kwasnik had made a pre-bankruptcy settlement offer of $15,000 which was rejected by the attorney for the decedent’s estate.